Honorable Roy Romer Governor 136 State Capitol Denver, Colorado 80203-1792
Dear Governor Romer:
You have requested a legal opinion concerning a possible constitutional attack upon the validity of the legislation which created the Denver Metropolitan Major League Baseball Stadium District (the "Baseball Stadium District"). Your question concerns the application of a specific provision of Article XIV, section 17 of the Colorado Constitution pertaining to the formation of a regional service authority.
SPECIFIC QUESTIONS PRESENTED AND CONCLUSIONS
a. Is the Denver Metropolitan Major League Baseball Stadium District a "service authority" within the meaning of article XIV, section 17 of the Colorado Constitution, subject to the constitutional requirement that the district may be formed only upon the approval of the majority of qualified electors in the territory included in the district?
No.
b. Is the Colorado General Assembly required by the state constitution to create a regional service authority as the only political subdivision permitted to provide services within a multi-county jurisdiction?
No.
ANALYSIS
During the 1989 legislative session the Colorado General Assembly passed House Bill 1341 creating the Baseball Stadium District. 1989 Colo. Sess. Laws ch. 293. The Baseball Stadium District covers a multi-county area within metropolitan Denver. The legislation defined the district as "a body corporate and politic and a political subdivision of the state." Section 32-14-104, C.R.S. (1990 Supp.). The stated legislative purpose for establishing the district was to provide a mechanism for financing and constructing a major league baseball stadium in the Denver metropolitan area. Section 32-14-102, C.R.S. (1990 Supp.). The new legislation authorized the board of directors of the Baseball Stadium District to submit to registered electors within the district the question whether to approve an additional sales tax levy to finance a baseball stadium in the event a major league baseball franchise was awarded to Denver. Section 32-14-105, C.R.S. (1990 Supp.). That election took place in September when a majority of voters within the district approved the proposed sales tax. The legislation does not require that the formation of the Baseball Stadium District itself be subject to approval by the voters.
Opponents of the proposed sales tax to finance a baseball stadium have made statements reported by the press suggesting that the formation of the Baseball Stadium District, as well as the election approving the proposed sales tax, violated certain requirements of article 14, section 17 of the Colorado Constitution pertaining to the creation of a "service authority." Threats of possible litigation over this subject have not materialized. For that reason, it is not entirely clear what arguments would be made to invalidate actions taken by the Baseball Stadium District. In response to your request, this opinion anticipates and answers certain specific constitutional arguments which might be made in the context of Article XIV, Section 17.
That section was initially adopted by the voters on November 3, 1970, effective January 1, 1972. It was referred to the voters by the Colorado General Assembly as part of a package of revisions relating to local government. See 1969 Colo. Sess. Laws, p. 1247. Article XIV, Section 17 authorizes the Colorado General Assembly to provide by statute for establishing, organizing and empowering "service authorities" which may include all or part of one or more counties subject to the requirements set out in subsections (1)(b), (c), (d) and (e) of Article XIV, Section 17. The Colorado General Assembly subsequently passed the "Service Authority Act of 1972" to implement the provisions of Article XIV, Section 17. Article 7, Title 32, C.R.S. (1973). A key constitutional restriction for the purposes of this opinion is the requirement of subsection (1)(b) that a "service authority" may be approved only with the approval of a majority of the registered electors voting thereon in the territory to be included. An additional restriction possibly relevant to this opinion is found in subsection (3)(c) and (d) of that constitutional provision. These constitutional references require that all propositions by a service authority to provide functions, services or facilities must be submitted to the registered electors of the authority and, if a multi-county service authority, must be approved by "a majority of the registered electors of the authority voting thereon in those included portions of each of the affected counties" (emphasis added). It is my understanding that the sales tax proposal to finance a new baseball stadium obtained approval by a majority of all the registered electors in the Baseball Stadium District. That measure, however, did not obtain a majority approval in all of the counties which comprise the district.
If Article XIV, Section 17 is applicable to the Baseball Stadium District, it may be argued that the formation of the district and the vote on the sales tax proposal failed to comply with constitutional requirements. I conclude, however, that Article XIV, Section 17 has no application to the Baseball Stadium District.
House Bill 1341 provides that the Baseball Stadium District shall be "a body corporate and politic and a political subdivision of the state." Section 32-14-104, C.R.S. (1990 Supp.). The legislature did not say that the district was to be a regional service authority nor did it suggest any intention that the restrictions of Article XIV, Section 17 would apply to this political subdivision.
The Colorado Supreme Court recently held that "nothing in article XIV, Section 17 limits the power of the General Assembly to create political subdivisions other than service authorities."Arena v. Transit Construction Authority, 788 P.2d 1261,1265 (Colo. 1990). The Colorado Supreme Court there rejected the implicit argument that if the legislature could address public concerns by means of a service authority, then any political body created for that purpose had to be a service authority.788 P.2d at 1265. That case involved a constitutional challenge to legislation creating the Transit Construction Authority to establish a mass transit system within a "service area" in metropolitan Denver. Opponents of the system argued that the Authority was a "service authority" under Article XIV, Section 17, and that the enacting legislation failed to meet state constitutional requirements. The plain meaning of Article XIV, Section 17, said the court, is to limit the creation of service authorities only. Nothing in that section limits the power of the legislature to create other political subdivisions. Because the legislation in question created the Authority as a body corporate and political subdivision, it did not purport to create a service authority and was not inconsistent with Article XIV, Section 17. 788 P.2d at 1265.
SUMMARY
It is my opinion that the Arena v. Transit ConstructionAuthority case is dispositive of the arguments raised against the Baseball Stadium District legislation. Article XIV, section 17 of the Colorado Constitution has application only to legislative efforts to establish service authorities. The Baseball Stadium District is not a service authority and consequently not subject to the restrictions of that particular provision of the Colorado Constitution. If you are aware of additional questions about this subject which are not addressed in this opinion, please do not hesitate to contact me.
Sincerely,
 DUANE WOODARD Attorney General
GOVERNOR, OFFICE OF ADMINISTRATION
Colorado Constitution, Article XIV, Section 17
Colorado Constitution, Article 14, Title 32, C.R.S. (1990 Supp.)
The Denver Metropolitan Major League Baseball Stadium District is not a regional service authority subject to the restrictions of Article XIV, Section 17 of the Colorado Constitution.